UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BRIGETTE MCGOWAN,**

    Plaintiff,

v.

    Case No. 5:24-cv-13362

**UNIVERSITY OF MICHIGAN,**

    Defendant.

## COMPLAINT AND JURY DEMAND

Brigette McGowan ("Plaintiff"), by and through her attorney, Amy Marino of Marino Law, PLLC, for her Complaint against University of Michigan ("Defendant" or "the University"), states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Brigette McGowan resides and is domiciled in this District in the city of Ann Arbor, in the County of Washtenaw, State of Michigan.

2. Defendant University of Michigan has its headquarters and principal place of business in this District in the city of Ann Arbor, in the County of Washtenaw, State of Michigan. As such, it is deemed to reside in this District, and venue is proper in this District. 28 U.S.C. § 1391(b)(1) & (c)(2).

3. This suit is brought for violations of the Americans with Disabilities Act As Amended ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, and the Family and Medical

Leave Act as Amended (FMLAAA), 29 C.F.R. § 825.100, *et seq.* As such, it raises federal questions, and subject matter jurisdiction is proper in this Court. 28 U.S.C. § 1331.

4. The state law claims in this Complaint are so related to Plaintiff's federal claims in this action that they form part of the same case or controversy. They do not raise novel or complex issues of state law, nor do they predominate over Plaintiff's federal claims. Accordingly, supplemental jurisdiction over Plaintiff's state law claims is proper in this Court. 28 U.S.C. § 1367(a).

5. The events giving rise to this action mainly occurred in Ann Arbor, in the County of Washtenaw, State of Michigan.

## FACTUAL ALLEGATIONS

6. Plaintiff incorporates here by reference the allegations contained in the foregoing paragraphs.

7. Plaintiff began her employment with Defendant approximately 11 years ago as a cook working full time in one of Defendant's dining halls on campus in Ann Arbor.

8. Some years ago, Plaintiff's ankle was seriously injured when a large metal serving pan full of food landed on her ankle while she was on duty as a cook in Defendant's dining hall.

9. Plaintiff suffered ongoing and worsening pain and mobility limitations as a

result of the injury.  Since the injury, she has received various diagnoses, including without limitation the following: osteochondral lesion of talar dome, synovitis of left ankle, impingement syndrome, posterior tibial tendonitis, gait instability.  At times, Plaintiff has had to use a cane and/or mobility scooter to ambulate.

10. Plaintiff's ankle injury qualifies as a disability as defined by the ADAAA, because it is a physical impairment that substantially limits one or more major life activities, to wit: bending, walking, standing, and lifting.  42 U.S.C. § 12102(1).  Further, Plaintiff has a record of such impairment due to this injury, and Defendant is on notice of the injury and resulting impairment, and Defendant regards Plaintiff as having such an impairment.

11. As a cook, Plaintiff was expected to stand and/or walk essentially for her entire shift.  Over time, her ankle pain worsened, especially when she had to stand and/or walk for long time periods.  This resulted in some absences from work for medical treatment or due to pain and swelling that required her to rest and/or elevate her ankle.

12. Ms. McGowan continued her work as a cook as long as she could until approximately August 23, 2022, and then went on short-term disability leave to undergo ankle surgery on or about September 8, 2022, in hopes that the surgery would make it possible for her to resume her work without impairment.

13. Unfortunately, the surgery was not immediately successful, and her ankle

pain and mobility difficulties worsened. She remained on short-term disability leave until approximately June 2023. Defendant's own doctor performed a medical exam and instructed that Ms. McGowan could only return to work with certain restrictions: that she was only able to perform primarily sedentary work, should remain seated the majority of the time except for limited walking and standing, with regular breaks to move and stretch, and other restrictions. Ms. McGowan requested these accommodations from her employer in writing.

14. Her manager accommodated her disability from approximately June 2023 through September 2023 by assigning her to work as a greeter in the student dining hall, rather than as a cook, during which assignment she was able to remain seated most of the time.

15. However, in early September 2023, without explanation or justification, her manager refused to continue the accommodation, so Ms. McGowan again took short-term disability leave until it expired in approximately January 2024.

16. One or both of her short-term disability leaves was taken pursuant to the FMLAAA.

17. On or about November 22, 2023, U of M's Work Connections program determined that Ms. McGowan could return to work, but only at a position that did not require her to primarily stand or walk.

18. Her manager again refused to permit her to return to work as a greeter in

the dining hall, although that accommodation had been in effect through the summer of 2023.

19. In January 2024, U of M informed Ms. McGowan that she had exhausted her short-term disability leave and that "Work Connections continues to support your permanent restrictions however M|Dining can not [sic] accommodate these restrictions."

20. Ms. McGowan was given two options: either take unpaid medical leave or voluntarily resign. The previous accommodation to work as a greeter was inexplicably no longer available to her, even though it had worked well and greeters are regularly employed in all or almost all of Defendant's dining halls. There was no reasonable justification for Defendant's refusal to continue the accommodation.

21. Ms. McGowan requested to take Long-Term Disability leave but was informed by Defendant via email that, "'in order to be eligible for LTD coverage, you must be actively at work. Actively at work means you are present in the workplace at your regular appointment effort. You are not considered actively at work if you are absent from the workplace for medical, childcare, personal leaves, leave without salary, or while using extended sick time pay.' Because you have coded days of ETW, UET and PTS (between July 24, 2023 - September 7, 2023), this does not consider you to be actively working."

22. As such, in order to qualify for long-term disability leave, she would have

to return to her regular full-time employment as a cook without any absences for 20 continuous workdays, which Defendant's own doctor determined she was not able to do.

23. Because Ms. McGowan had missed some hours of work in the summer of 2023 due to her medical needs and severe pain, U of M informed her--after the fact--that she could not regain LTD eligibility because she had occasionally missed hours of work over the summer.

24. When an employee with a disability first takes and exhausts short-term disability leave to pursue treatment, and/or in hopes that the condition may improve, Defendant's policy and practice requires her to return to her regular full-time work for 20 continuous workdays to become eligible to take long-term disability leave.

25. This requirement did not appear in the text of Plaintiff's CBA with Defendant. To Plaintiff's knowledge, she was never provided with a copy of Defendant's policy that long-term disability leave was not available to an employee who had previously exhausted short-term disability leave but could not return to work full-time without missing any work hours for 20 consecutive workdays.

26. Of course, an employee facing a long-term disability requiring medical leave is almost certainly unable to work full-time for 20 continuous workdays at her regular position without missing any worktime whatsoever. Even if she could, Defendant would likely point to her ability to work full-time for 20 consecutive

6

workdays without missing any hours as proof that long-term disability leave was not required or appropriate.

27. A worker in this circumstance is essentially unable to qualify for long-term disability leave and is forced to either take an unpaid leave of absence, resign, or be fired.

28. Faced with this Hobson's Choice, Ms. McGowan informed Defendant in writing that she would take an unpaid leave of absence. Although Defendant had all the information it needed at that point to give effect to her decision, it required her to fill out a request form. Even knowing that Ms. McGowan is not technologically proficient with computers, and despite her requests to use other methods of communication, U of M Human Resources only sent her the form by email. She was unable to open the required form by computer link and/or email on January 26, 2024, and informed H.R. of this. Continuing to insist upon sending her the form electronically, U of M terminated her employment on January 31, 2024, under the pretext that she did not submit a form that H.R. knew she could not electronically access.

29. This policy and practice of Defendant treats employees who have previously taken short-term disability leave differently than those who have not, as the former are denied long-term disability leave that the latter are eligible for. As such, this policy and practice impermissibly discriminates against and retaliates against

employees on the basis of their disability status, in violation of the ADAAA.

30. Further, this policy and practice impermissibly discriminates and retaliates against employees who have taken short-term leave under the Family Medical Leave Act, in violation of the FMLA.

31. Plaintiff utilized the grievance procedure set forth in her union CBA to grieve her termination. On March 15, 2024, her grievance was denied by Wade Baughman, Defendant's Associate Director of Labor Relations, on behalf of the University Review Committee, who determined that no violation of the CBA occurred.

32. Plaintiff has exhausted her administrative remedies before bringing this lawsuit. On September 16, 2024, she timely filed a charge alleging discrimination and retaliation in violation of the ADAAA. EEOC Agency Charge No. 471-2024-07242.

33. On September 16, 2024, the EEOC determined that it was unlikely to be able to complete its investigation within 180 days from the date the charge was filed, so it terminated its processing of the charge and issued a Notice of Right to Sue, attached hereto as **Exhibit A**.

34. Plaintiff has timely filed this lawsuit within the 90-day period allowed after receiving her Right to Sue Notice. *See* Fed. R. Civ. P. 6(a)(1)(C).

**COUNT I - DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED**

35. Plaintiff incorporates here by reference the allegations contained in the foregoing paragraphs.

36. At all relevant times, Defendant employed more than 15 employees in an industry affecting commerce and, as such, was an employer as defined by the ADAAA, 42 USC § 12111(5)(A).

37. At all relevant times, Plaintiff was an employee as defined by the ADAAA. 42 USC § 12111(4).

38. Plaintiff is a person within the meaning of the ADAAA, 42 USC § 12111(7), and §701 of Title VII of the Civil Rights Act of 1964, 42 USC 2000e.

39. Plaintiff is a qualified individual under the ADAAA, because she can, with or without reasonable accommodation, perform the essential functions of a position as a greeter or other positions within M|Dining. Furthermore, with the reasonable accommodation of temporary reassignment to another position, Plaintiff would likely be qualified to return to her position as a cook in the future.

40. Defendant terminated Plaintiff in contemplation of Plaintiff's disability and her request for long-term disability leave.

41. Defendant refused to meet Plaintiff's multiple reasonable requests to accommodate her disability beyond the summer of 2023. There was no reasonable justification for this refusal. Plaintiff believes and thereon alleges that this refusal was intended to remove her from Defendant's active payroll by forcing her to take extended unpaid leave or resign, and it did result, directly and indirectly, in Defendant terminating her employment.

## COUNT II- RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED

42. Plaintiff incorporates here by reference the allegations contained in the foregoing paragraphs.

43. Plaintiff engaged in protected activity under the ADAAA, to wit: requesting a reasonable accommodation of reassignment to another position within M|Dining for her ankle to heal, taking short-term disability leave for her ankle injury and surgery for same; requesting long-term disability leave for her ankle injury.

44. Defendant was aware of Plaintiff's protected activity, as Plaintiff's requests were directed to her supervisor and/or H.R. verbally, in writing, and electronically. Defendant's H.R. representatives and managerial personnel denied Plaintiff's requests, which establishes that Defendant had the required awareness.

45. Defendant took adverse actions against Plaintiff in retaliation for, and as a direct result of these protected activities, and these adverse actions were caused by Plaintiff's assertion of her rights under the ADAAA, to wit: denying her request for reasonable accommodation, denying her request for long-term disability leave because she had previously used up her short-term disability leave, creating administrative "hoops" for her to navigate, insisting on communicating with her only through email even after she expressed to H.R. that she was not proficient in email communication and could not access the required forms electronically, terminating her employment, and finally denying her grievance regarding her termination.

46. These adverse actions occurred shortly after, and in direct connection with, Plaintiff's protected activities and were caused by Defendant's reaction to Plaintiff's protected activities.

**COUNT III – RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT AS AMENDED**

47. Plaintiff incorporates here by reference the allegations contained in the foregoing paragraphs.

48. Plaintiff is a qualified individual under the FMLAAA, by having one or more serious medical conditions as defined by the FMLAAA and possessing such conditions at all relevant times to the allegations in this Complaint.

49. Plaintiff took protected actions under the FMLAAA, to wit: seeking and taking short-term disability leave for her ankle injury and surgery for same.

50. Defendant was aware of Plaintiff's protected actions under the FMLAAA, as shown by it previously granting her short-term medical leave.

51. Defendant retaliated against Plaintiff for taking short-term disability leave under the FMLAAA by denying her request for further reasonable accommodation of her disability, denying her request for long-term disability leave because she had previously used up her short-term disability leave, creating administrative "hoops" for her to navigate, insisting on communicating with her only through email even after she expressed to H.R. that she was not proficient in email communication and could not access the required forms electronically, terminating her employment, and finally

denying her grievance regarding her termination.

52. These adverse actions were caused by Plaintiff's protected activity in previously taking FMLA leave, as Defendant's policy and practice would permit an employee who had not previously exhausted short-term FMLA leave to take the long-term disability leave that it denied Plaintiff.

## COUNT IV - BREACH OF CONTRACT

53. Plaintiff incorporates here by reference the allegations contained in the foregoing paragraphs.

54. In connection with her employment by Defendant, Plaintiff was a member of a labor union at all relevant times and party to a collective bargaining agreement ("CBA") with Defendant.

55. Furthermore, when Defendant hired Plaintiff, an implied-in-law contract was formed: in exchange for Plaintiff's labor, Defendant would act as a lawful employer.

56. Plaintiff performed under these contracts by completing her duties as required and notifying Defendant when she required a reasonable accommodation for her disability.

57. Defendant's termination of Plaintiff's employment under the circumstances described herein is a violation of the CBA.

58. Defendant's termination of Plaintiff's employment under the

circumstances described herein violates this implied contract to act as a lawful employer.

59. Defendant's violations of the CBA and the implied contract to act lawfully have directly and proximately damaged Plaintiff in the form of lost wages, lost benefits, lost seniority, and otherwise, in an amount to be determined at trial.

### COUNT V - WRONGFUL TERMINATION UNDER MICHIGAN LAW

60. Plaintiff incorporates here by reference the allegations contained in the foregoing paragraphs.

61. Defendant's termination of Plaintiff due to her disability, and in retaliation for having taken short-term disability leave and seeking to take long-term disability leave, as set forth herein, violates federal law, to wit: ADAAA, 42 U.S.C. § 12101, et seq., and FMLAAA, 29 C.F.R. § 825.100, et seq.

62. As such, the termination constitutes wrongful termination under Michigan law.

### PRAYER FOR RELIEF

Plaintiff respectfully asks the Court for relief as follows:

a. Judgment in Plaintiff's favor and against Defendant on all counts;

b. An order requiring Defendant to rehire Plaintiff in a position that reasonably accommodates her disability, with similar pay and benefits to the position she formerly held, as well as full restoration of her seniority

  as an employee of Defendant;

c. An award of damages on Plaintiff's ADA, FMLA, and wrongful discharge claims, which includes, but is not limited to back pay, front pay, lost wages, lost employee benefits, attorney fees and costs, and compensatory damages, and an appropriate award of pre- and post-judgment interest;

d. Liquidated damages where appropriate;

e. An award of punitive damages where appropriate in an amount to be proven at trial;

f. An award of compensatory, consequential, incidental, expectation, and/or other damages on Plaintiff's contract claim;

g. All damages and other relief afforded by law;

h. Attorneys' fees and costs as provided by law; and

i. Such other further relief as the Court may deem just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all questions so triable.


Dated: December 16, 2024

              Respectfully submitted,

              /s/ *Amy L. Marino*
              Amy L. Marino (P76998)

                          MARINO LAW, PLLC
                          23971 Pheasant Run
                          Novi, MI 48375
                          Tel.: 248-797-9944
                          amy@marinopllc.com

*Attorney for Plaintiff*